Good morning, Your Honors. Jeffrey Dickerson appearing on behalf of myself. It's my understanding I have 15 minutes for argument. I'm going to save five for rebuttal. All right. Manage your own time. I'll manage my own time. You have 15 minutes total to do whatever you want to. Yeah. And if I change my mind at the end on how much I want to save for rebuttal, whatever I have left, I'll have. In any event, we're here on two matters, as I understand it. One is the $25,000 contempt fine for Hussein, 12 and 13, and whether that violates the court's injunction, putting aside for now the question of whether that injunction is valid in the first place. The other issue before the court, as I understand it, limiting the arguments today, is whether the million-dollar-plus sanction, as to me and Dr. Hussein, is appropriate. I'd like to address the highest monetary figure first, if I may, and that is the million-dollar-plus sanction, which was awarded against me based upon allegedly vexatious conduct, litigation conduct. And it's my position, Your Honors, that the case below, beginning with the complaint and all the way through the denial of summary judgment, was a good case. It was a good civil rights case. It was a good 1983 case under the First Amendment and Equal Protection Clause. It was a good case under Title VII. We had direct evidence of discriminatory intent out of at least one individual, if not more. So that tells us, under Reed v. Sanderson-Plumbing, that we're going to get to a jury trial. We went to the hearing with respect to the contempt order on the other part we're here on, which is Hussein in 12 and 13. And the district court got so mad that he pounded his hand on the table and says, I'm so upset with you, and in a minute I'll get to whether or not he should have been upset. But he was. And at the end of that, they got up and they asked for an opportunity to file a limited motion for reconsideration on qualified immunity. And he granted that to them. And they filed a supplement that covered everything that was already canvassed in the briefs on summary judgment, with 241 pages they'd already filed. And we'd opposed with 95 pages. So that was a surprise. And then the district court, after banging his fist on the table, granted the motion to reconsider and overturned his ruling on the summary judgment and killed the case. And then there's a counterclaim left. Everybody forgot about that. Whoops, the counterclaim. NSHE had filed a counterclaim late in the case, right on the eve of the discovery cutoff, that generated a whole bunch of additional discovery that they're now complaining that I put them through. It was their counterclaim that led to that discovery. And at the end of the day, they said, we want to dismiss our counterclaim with each party to bear their own fees and costs. By this time, I'm out of the case. I'm out of the case. Dr. Hussain's handling it. But that's what they wanted to do. That's the language they used with the court. And the court granted that motion. The court didn't say each party to bear their own fees and costs, but it adopted their request and their request for relief. So presumably, everybody bore their own fees and costs. Lo and behold, despite that language, they file a motion for attorney's fees. And they get $1.2 million in sanctions from the judge, running it from January of 2006. What did I do that was unreasonable and unnecessary in this litigation? What specific conduct was it that I engaged in, other than litigating the case, as any litigator would do? I'm a seasoned civil rights litigator. I know what's necessary in this case. And all I did was depose the defendants in the case. I think there's some question in here about the judge suggesting if you don't have any evidence, you should dismiss them. And there was this one lady that you admitted you had no evidence on, and yet continued with the case. That seemed to be one of the basis that the trial judge was using. I don't see any answer in the brief to the judge's position. With all due respect, there is an answer in the opening brief and in the reply brief, and I'll give it to you now. Again, the lady's name was Nguyen. And the allegations against her was that she had manufactured a false complaint about abuse in Dr. Hussein's laboratory that she'd suffered personally, and that she'd made that complaint and that it had turned into an investigation. When we took her deposition, she indicated she never made such a complaint and never wanted to make such a complaint, and she got along fine with Dr. Hussein. So we figure out, well, where did this come from? Through depositions, we weave through the back door and find out that Dr. Pardini learned from Susan Henthorne that she had a complaint. But did she – did you dismiss her right away?  No. Then we took Susan Henthorne's deposition. Susan Henthorne – Susan Henthorne, with all due respect, Your Honor, Susan Henthorne said – implicated Nguyen and said she did make this false complaint. She didn't call it false, but she said that's where she got the complaint that she passed on to Dr. Pardini that led to the investigation. So now we have conflicting evidence. We have Nguyen saying, I never made a complaint, and Henthorne saying she did make a complaint. Now, in the briefs, it's indicated that you said to the judge that you had no evidence. Is that incorrect? I would defer to the record on that, Your Honor. But as I stand here now, I'm telling you, Your Honor, I've been in front of you before, and I'm not going to misrepresent the record to Judge Wallace. It's not going to happen. But my – my understanding from the record is that what – it's exactly what I'm telling you. Nguyen testified that she did not make a complaint. Henthorne testified Nguyen did make a complaint. If we want to make – so I took – I took the admonition from January of 2006 at the motion to dismiss. If you think that you can drop somebody out of this case, shed them from the case. So we offered to do that. And they say, well, we'll do that if – judge, only if you award fees and costs for defending Nguyen. And all I'm doing is what the judge said to do. Right. Well, I think his complaint was that you agreed to dismiss the charges, and once this fee issue came up, then you reinstated the charges. Not reinstate. I went through the motion to dismiss her. Right. Yeah. And it went forward. She wasn't deposed again. I mean, she'd been deposed. That was her sole exposure to the lawsuit until its demise. So we had evidence to support a case against her based on Susan Henthorne's testimony. So I didn't even have to let her out of the case. But she – So why did you? Because she's a nice lady and she makes a good witness. And at trial, I thought that it would be good to have her out of the case because – Makes sense. Then why did you decide to withdraw your voluntary dismissal? Because I didn't want – I didn't think – Just the fee issue? Yeah. I didn't – why should I give Dr. Hussain up to attorney's fees when it's not justified? We have evidence against her based on Henthorne's testimony. We don't have to let her out, but we're letting her out. And you want fees and costs? What's going on? I mean, just come on. Let's just do it. Let this – it's in their client's best interest to let her out. It's not – why go after fees and costs? So that particular instance is just a small example of the way this case was litigated by the defense. Let's just say the judge is going to be in the courtroom, and you're going to have  You're going to have a witness. Every turn, it's something sanctionable, something sanctionable. And nothing was sanctioned the whole way through until I get a million dollars against me. Why – under Yagman, why didn't somebody come up to the judge and say, Judge, tell this guy he's got to stop it. He's got to stop this discovery abuse. Did I ever get sanctioned for discovery abuse? No. He's got to stop withdrawing all these motions, these emergency motions. They made a motion for sanctions to Judge McQuaid, the magistrate. What did he do? He denied the motion for sanctions. So every step of the way, to the extent they wanted it policed, it was policed by the district court and the magistrate judge. And every step of the way, they didn't get any sanctions until the end after the judge pounded his fist on the desk, saying, I'm upset at you, gave them the opportunity to file a motion for reconsideration, granted that motion for reconsideration. They dismissed their counterclaim to bear – all parties to bear their own fees and costs. And then they make a motion for attorney's fees, and the district court entertains it and says, that sounds good. Why don't you prepare the order? I'll sign it, without me even reviewing it. That's what happened to the Loews, Your Honors. It's not a bad faith case. There was no willfulness in how I litigated this case. It was litigated at every step of the way properly. And the things that they complained about, they had every opportunity to address as the case progressed. They did, to the extent they wanted to, and they were turned down. It wasn't until the very end when they had a judge who was upset with me for whatever reason and imposed this enormous sanction against me, which doesn't hold up under the law or under the facts. There's no – nothing in the order that shows that anything I did was unnecessary and unreasonable and, moreover, that resulted in something that was bad faith, that was designed subjectively, on my part, to be vexatious, to extend the litigation beyond normal litigation. And that leads to the next issue, which is the judge's award. He arbitrarily picked the January 2006 date because that's the date where the judge said, I'm not going to dismiss your complaint, but if you find evidence isn't there to support somebody, let them out of the case. He didn't say that beginning today, if you don't drop people out of the case, I'm going to sanction you for every second after that, that you keep them in the case. That wasn't it. He understood that this was going to be a long piece of litigation, it was complicated, and it would go forward. And it did. And at the end of the day, what happened happened. Dr. Hussain's appeal of the motion for summary judgment was dismissed here for a warrant of prosecution. But I think if Your Honors go back and look at that, you'll see that there's meritorious – there's a meritorious case underlying everything I did in this case. And then to say that we're just going to saddle Mr. Dickerson and Dr. Hussain with everything that happens since January of 2006 is arbitrary, it's capricious, it makes no sense. He pulled that out of thin air at the end of the hearing. Oh, by the way, just limit – when you draft that order, just limit it to everything after January of 2006, which was the motion to dismiss here. So that's my – those are my main points that I wanted to make with respect to the $1.2 million judgment, Your Honor. And then with respect, turning to – to Hussain – Hussain 12 and 13, as we pointed out in the briefs, you know, there's a whole different standard applicable to this issue, which is whether or not I should be held in contempt. Was the injunction clear and unambiguous? Again, that's another issue for another appeal. But for purposes of interpreting that and whether or not there's a – there was a reasonable interpretation of that order is limited to facts underlying Hussain 1 and 2. Hussain 12 and 13 had nothing to do with Hussain 1 and 2. They dealt with facts and situations that arose subsequent to that. In Hussain 12, it was the issue of the members of the Faculty Senate who falsified their testimony with respect to – and Judge Proe, by the way, sanctioned counsel for submitting those affidavits. But we didn't discover that fraud until 28 months after the last amended complaint in Hussain 1 and 2. So how can that arise out of Hussain 1 and 2? And with respect to Hussain 13, this was Dr. Hussain seeking comparative evaluations over their faculty in 2008 for 2007 performance. Again, the last amendment in Hussain 1 and 2 was allowed in May of 2005. So all of these facts, situations, circumstances arose way after the facts and circumstances underlying Hussain 1 and 2 and, therefore, did not violate the injunction. You're down to a little less than three minutes. Do you want to reserve? I do. Thank you. Thank you, counsel. Dr. Hussain. Welcome to the Ninth Circuit. We have – you have five minutes, and you can save some for rebuttal if you want, but your total amount of time is five. I know that's not much time. I appreciate your honor. I – actually, I was almost asking the Court to allow me two minutes for rebuttal if I can. All right. And I'm going to try to cover the issue – the most important issues in the appeal number one. First, there are reasons why this Honorable Court and the other sister courts and the Supreme Court have condemned the practice of district courts mechanically signing orders authored by defense counsel. This Court has a long history over the past 40 years, starting from 1970 to earlier in 19 – 2010. The order granting $1.2 million is not an exception. This order was authored by the defense counsel. It was a completely verbatim transfer of the arguments in defendant's motion and in the reply into the proposed order, which was mechanically signed into a final order. So the facts, the findings of facts, and the conclusions of law, and those 34 pages, which are, by the way, printed on the law firm's stationery, every single page of them. And these findings, facts, and conclusions of law are entirely the defense counsel's arguments. So the only contribution the district court have provided in this order is the typographical changes, which I have quoted in the opening brief and in the reply brief. The fact that the order is authored by defense counsel by itself is not a problem if the facts are based on the record. But my 60B motion described in detail with direct evidence that the facts are false and are not supported by the record. And that's number one. Number two, there are extensive due process violations. The first of them is the violation of Hussein's due process right to fair judgment. Hussein deserves a fair judgment by impartial judge, not by the defense team. When the district court got the opportunity four months later after issuing or entering its order granting $1.2 million in attorney fees to reconsider under my 59E motion, what happened, Your Honor, is the court again disregarded the evidence of violations of my due process, of Hussein's due process right to, first, to the evidence of the attorney fees, which is the unredacted time records according to this court's precedence under existing laws to date. And number two is Hussein's due process right to oppose the motion. Hussein requested that 90 days to be allowed to him after the filing of the unredacted time records, unsealing the unredacted time records. That was denied. And the Hussein was denied also his due process right to be heard. And there are examples in the briefs concerning what happened at the hearing of the $1.2 million. And finally, the Hussein was denied his due process right to fair judgment. This court, a recent case in Harris v. Maricopa County Superior Court 2011, this court set forth the law of how in civil rights actions defendants can receive attorney fees. And those are the claims are frivolous, unreasonable, and groundless. The court also emphasized that the district court must assess the claims at the beginning of the case and also must avoid Bostahak reasoning. Unfortunately, in this case, Your Honors, this is the case here, that everything is Bostahak reasoning. Hussein's claims went through the first assessment two years after the case was filed in 2006, and the claims survived six motions to dismiss. None of them was called frivolous or any of the words described in this court or the guidance by this court for frivolousness. Number two, two years later in 2008, Hussein actually prevailed at summary judgment because the defense team failed to authenticate half of the evidence. This is the law of the case. To date, half of the evidence are stricken from the record. So the court ruling, the district court's own ruling, quoted in my brief, showing that they did not carry their burden at summary judgment. And then we went through. So Hussein, again, at that time, no frivolousness or recklessness or vexatiousness has been described. And then when the defense team was given an opportunity to offer, which is the fifth order at the time, which is the $1.2 million order in 2010, there is a page in the opening brief showing a database of how many times the word frivolous was used, the word recklessness was used, and numerous words which never existed in evaluations of Hussein's claims before in the prior six years. You're over your time now, so why don't you go ahead. I'd like to stop here, Your Honor, and save my time for another. Thank you. Counsel. Thank you, Your Honor. May it please the Court. My name is Debbie Leonard on behalf of the Nevada System of Higher Education and the 20 individuals who were sued by Hussein in these consolidated cases. The record shows that this case involved a vindictive client, Hussein, who thought that every slight and perceived injustice at the university should give rise to a lawsuit. His attorney, Dickerson, rubber-stamped all of Hussein's allegations without objectivity and without proper investigation. Together, they disregarded court orders, they re-litigated issues they had lost, they repeatedly sued the defendants, witnesses, defense counsel, and ignored numerous warnings from the court that their conduct would result in sanctions. Based on this record, the first contempt order and the award of attorney's fees were both a proper exercise of the district court's discretion and should be affirmed. And I will address each of the orders in turn, starting with the first contempt order. I believe Judge Wallace had a question. Did you? Yes. When you get to the fee amounts, I'd be interested. I've never seen one this high before, so. Would you like me to start there, Your Honor? Start where you want to start. Okay. Thank you, Your Honor. Starting with the first contempt order, then, this was within the district court's discretion because each element of the standard for contempt are satisfied. There was a violation of two court orders. There was the injunction that listed each of Hussein's first 11 cases and then enjoined Hussein and Dickerson from litigating, relitigating, or attempting to relitigate the factual and legal issues being currently adjudicated in the lawsuits set forth herein. Now, I take it what you have to do is get under this umbrella of being currently adjudicated in the lawsuits. And I take it that's lawsuits one and two? Well, the face of the injunction listed all 11 of Hussein's cases and addressed those 11 lawsuits. Now, in the briefs, Dickerson, Mr. Dickerson has contended that it only addressed Hussein one and two because, in his opinion, that's all that was discussed at the hearing on the motion for injunctive relief. That's the question I wanted to address. Thank you, Your Honor. Let me address that in a couple of ways. First of all, the record clearly shows the transcript of that proceeding at the motion for injunctive relief. The Mr. Dickerson got up before the Court, and he was asking the Court to consolidate all of Hussein's Federal lawsuits at that time. And in making that argument, he stated that they all derive from the same core facts. There was a common nucleus of facts. They're all interrelated. The facts overlap. The witnesses overlap. And so based on that, they're all one and the same and should be consolidated. The second issue is that the – whether or not the – I think the Court needs to look at the face of the injunction, and it describes all 11 lawsuits and then says – and then prevents them from relitigating the lawsuits set forth herein. But even if it was only limited to Hussein one and two, as Mr. Dickerson contends, they would still be in contempt. And let me try to explain that because the record can be complicated in these cases. In Hussein one and two, one of the allegations that Hussein set forth was that he was being discriminated against and retaliated against because he was being treated differently than his peers. And he wanted to get a hold of the confidential performance evaluations of his peers in order to prove his allegations. The – excuse me. He – so he brought suit in Hussein one and two. He sought to get the performance evaluations of his peers. He sued Defense Counsel Mary Dugan because she would not allow, according to the rules of the Nevada system of higher education, she would not allow for the disclosure of those confidential materials. And so he ended up dismissing Ms. Dugan in Hussein two, but filed a new lawsuit in Hussein three, again under the premise that there should – he should be able to get a hold of these confidential personnel documents. And he was challenging the grievance procedures of the university. All of that was in Hussein one and two. And then it went into Hussein one and three as well. And then he filed another lawsuit, Hussein five, that addressed the exact same issue. And when you look at Hussein 13, which was the lawsuit that he filed after the court had enjoined him from filing further lawsuits, you look at that and that's precisely the issue he's addressing again. Now, Mr. Dickerson tries to draw the distinction by saying, oh, well, this is for a later performance evaluation. But that's disingenuous because the notion is, is that he was trying to get these confidential documents in Hussein one and two, Hussein three, Hussein five, and he alleged it again in Hussein nine. And the fact that he's saying that it was somehow later, that that justifies his conduct, is simply – is simply wrong. And it was – so whether or not the injunction was limited to Hussein one and two or it was all of Hussein's cases does not matter, because either way his conduct was in contempt of court. The other order that they violated was this order from the bench that the judge says, this is just maneuvering. This is not warranted. I don't want to see another case against a witness or opposing counsel filed by Dr. Hussein arising out of these facts. Do you understand me? And Mr. Dickerson responds, very clearly, Your Honor. But then, again, the record shows that Hussein 12 involved lawsuits against witnesses. Now, looking at whether there was substantial compliance, the record shows that they didn't take all reasonable steps to comply. The record shows that Mr. Dickerson closed one eye and turned the injunction sideways and thought, well, if I read it this way, maybe I can make an argument that somehow this might be in compliance. And that's simply not the standard for contempt. All reasonable steps mean the attorney who was standing before the judge and said, all of these cases are interrelated, and I argued that, and now the injunction refers to all of them, I better go back and ask the judge what exactly he meant. Or an attorney who represented to the judge at the hearing on the motion for injunctive relief, I have an injunction in my head, so I'm not going to file any new lawsuits. You don't need to put a you don't have to issue an injunction. An attorney who did that would reasonably, the reasonable thing to do would be to go back to the judge and say, wait, I thought you said one thing, but I'm reading this to say another thing. I need you to reconcile this for me. Dickerson never sought clarification. He never sought modification. He never sought reconsideration of the injunction. And the onus was on Hussein and Dickerson to comply. They ran the risk. When they read the injunction and saw what it said and then acted in defiance of that injunction, they ran the risk that they were going to be held in contempt of court. Also, when a the other side brings a motion for order to show cause why you should be held in contempt of court, the reasonable attorney would at that point say, I don't want to be held in contempt of court. It seems like they're reading my conduct as contemptuous. I'm going to go back to the judge and ask for clarification. But that's not what he did. He filed another lawsuit, Hussein 13, and that is precisely why their conduct was simply unreasonable. It was unreasonable for them to look outside of the four corners of the injunction. And certainly the clear and convincing evidence in the record, and you can look at the face of the complaints themselves to see the contempt conduct. With regard to their due process arguments on the contempt order, they had an opportunity to brief. They had an opportunity to appear at the hearing. And in fact, at the hearing, Mr. Dickerson pointed to the brief and said, what I have in the oppositions to these motions is a sincere explanation. Everything is in the brief that I would argue up here, Your Honor. And so for them to contend that somehow they didn't have due process is, again, disingenuous. And they never told the district court at that point that there was any confusion as to what was going to occur and whether they were subject to contempt sanctions at that point. Additionally, with regard to the contempt sanctions themselves, they were compensatory. They were designed to compensate the defendants for the amounts that they had incurred to bring the violations of the injunction and the district court's orders into the district court's attention. And there's no requirement under the law that a contender gets to weigh in on the amount of the contempt sanction or the reasonableness of the fees because they're, again, compensatory. Turning to the fee award, again, this was a proper exercise of the district court's discretion as well under either sanctioning authority. And Hussein was sanctioned under Section 1988, where fees can be awarded to defendants where there's vexatious, frivolous conduct brought to harass or embarrass, unreasonable without foundation, and under Section 1927 against, excuse me, Mr. Dickerson for reckless behavior. And in his brief, he argued that he, the district judge, did not find subjective bad faith, but under this Court's case in Fink and its subsequent decision in Lahiri, the standard is recklessness, and the record clearly shows here that he unreasonably and vexatiously multiplied these proceedings by acting first and then thinking later to the extent that he thought at all. And I'm going to go through each of these specific, the conduct that was in, that was vexatious. First of all, you start with these complaints. And they're in the record. You can see Hussein had an opportunity to amend one complaint twice, the other one once. So, and then the cases were consolidated. There was 21 defendants. It's unclear which claims applied to which defendants. It was essentially the spaghetti-on-the-wall strategy where Dickerson threw everything at the Court to just see what would stick. And there's no indication that there was investigation. It was, again, just rubber-stamping his client's allegations. And Your Honor, recognize this initial admonition that the district court issued in January of 2006 saying, I want you to look at these allegations against these individual defendants because I'm not going to be pleased when there's nothing there against them. If you don't have proof against somebody, then you better dismiss these people voluntarily. There's no reason these people should be subjected to a lawsuit if they aren't culpable somehow or arguably culpable. And rather than heed those warnings, the record shows that there was needless expansion of the proceedings rather than a narrowing, starting with discovery. In fact, just two weeks after the admonition from the district judge, Dickerson issues deposition notices where he reserves 37 days of depositions. A few weeks later, he noticed 130 depositions. And then six weeks later, they were vacated. So anything that investigation that was done to try to figure out who these people were by the defendants, that's all excess costs. The record shows he failed to meet and confer in his motion practice. Again, he'd file motions, wait for the defendants to file responses, and then just withdraw them. So all the fees incurred to file those oppositions were excess. Hussain says in a subsequent brief that that was, quote, normal litigation practice, but they were warned by the magistrate that that has a bad impact on the court. The court has to deal with all of these motions. Other things with regard to their motion practice is that there was a new magistrate judge assigned to the case, and they started renewing motions that they had lost in front of the first magistrate judge. The fees incurred to bring these things to the new magistrate judge's attention, those were all excess. Those were vexatiously – those were incurred because of their vexatious conduct. Renewing motions after relief had already been denied. There were subpoenas that were issued in this case that Dr. Hussain didn't like because they revealed documents that not only undermined his claims but served as the basis for the counterclaim. They never went through the normal channels to try to move to quash or to seek a protective order. And they stipulated to the use of these documents or waived objections, and then they just brought collateral attack after collateral attack, more motion practice, more motion practice. And you can see the docket is huge. Same thing with regard to the counterclaim. The magistrate judge says, look, they're the same issues, same witnesses, same amount of work. They were relevant to – the counterclaim facts were relevant to the issue of Hussain's allegation that he had outperformed his peers. The magistrate judge identifies it as a valid defense. The district judge says it's compulsory, yet they keep under different names, motion after motion, attacking this counterclaim. All the fees incurred with regard to that were excess. They – lawsuits against defense counsel. After they got enjoined, they brought motions for sanctions against defense counsel. There's nine of those in the record. All of those oppositions, all the fees and costs incurred – excuse me, all the fees incurred for that were in – were excess. Mr. Dickerson says – contends that the motion to dismiss the counterclaim with each side to bear its own costs, it's – he says that somehow that should bar the attorney's fees award that occurred in this case. It's clear, first of all, that the only party to the counterclaim was the Nevada system of higher education, not the other 20 defendants. Second of all, the defendants showed an intent to pursue their fees with regard to Hussein's claims, and the order itself was silent as to the allocation of fees and costs. So that – that argument is really – has no bearing on the matter. And then turning to the summary judgment, we get through all of this discovery. There was this admonition at the outset. And then at that point, Mr. Dickerson had a duty to reflect, to review the evidence and identify what he had to keep these 21 defendants in the case. What are the defamatory statements? And he stood up here and made some statements about Ms. Nguyenia and another defendant. But in his brief, he never cited anywhere in the record to somehow support those statements. And the same thing occurred in opposition to summary judgment, where he simply did not provide evidence. There was lots of pages of argument, but when he – he could never point out and say, these are the defamatory statements. Now, the district judge had initially denied the summary judgment motions because he didn't read the Celotex standard – the burden correctly, and we pointed that out to him on a motion for consideration. But at all times, it was Hussein who had the obligation to have the evidence to support his claims. It was his prima facie case that he had to make, and he didn't. In his – with regard to his First Amendment claims, he admitted that he – in his deposition testimony, that he made all these statements pursuant to his job duties. He had a Garcetti problem from the outset, yet he would not – he wouldn't narrow any of the claims. On discrimination, he acknowledged that this Court's Enquist case conceded – he conceded that that barred the claim, but then he continued to prosecute the case. And that's – there was no objectivity. There was no exercise of client control. So turning to the calculation, which I know Your Honor is interested in hearing, this – I do think that there's case law that supports a decision of this amount. First of all, the Chambers case from the – I think it's a U.S. Supreme Court case, and it was with regard to inherent authority sanctions, but it was an award of almost a million dollars of sanctions for attorney's fees for defense counsel – excuse me, for counsel who had pursued a case that he shouldn't have in a manner that he shouldn't have. This recent decision from Lahiri also has a $250,000 award. And if you look at the case law in Lahiri and in Sahlstrom, the court could – the district judge could, within his discretion, look at the cumulative effect of all of this conduct, all of these excess fees that were – that were needlessly caused. The amount does not depend on the injury. It – excuse me. It does depend on the injury, not on Hussein and Mr. Dickerson's wealth. And so they didn't need to weigh in on their ability to pay. And, indeed, even when faced with these sizable sanctions, they – Dr. Hussein didn't present any evidence with regard to his ability to pay. And Mr. Dickerson provided very little, and it was all conclusory, and it simply wasn't supported. It was well within the district judge's discretion to issue an award of this amount. If you look at the actual fees, they're less than what were actually accrued. The amounts sought were only for three attorneys and one paralegal where there were some other attorneys who had worked on the case. If there was a block of work that where part of it might have been – something else might have been worked on besides the defense of Hussein's claims, the entire block was omitted. The Kerr factor showed that the count – the attorneys charged lower fees for this client than they could demand and did demand and – for other clients. And it was for a limited window of time. The district judge was within his discretion to say that I'm going to award the fees from the complaint, or I'm going to award the fees from the date of the admonition on January – in January 2006, or I'm going to award fees at the end of discovery, or I'm going to award them from before summary judgment. He could have chosen any of those, but it was within his discretion. He lived through this case. He saw what was going on. He saw that all of the – that they were ignoring court orders, that they never narrowed the claims, that they just simply proceeded on with no objectivity, with no support for the claims. These were not ordinary litigation costs that he had awarded because there was nothing ordinary about this case. So in conclusion, Hussein and Dickerson demonstrated total disregard for the judiciary. There wasn't just one judge reprimanding them. It was multiple judges. It was the district judge, it was the first magistrate judge, and then the second magistrate judge. And their disdain for the district court pervades their briefs. They refer to orders as dicta. And they – the proper functioning of the courts can only occur where a district court can exercise its discretion to control abusive litigation conduct. So we would respectfully request that the Court affirm. Thank you, Your Honor. Any further questions? No. Thank you. Mr. Dickerson. Just a couple of points, Your Honor. The discussion about consolidation was at a different hearing with respect to my suggestion to the district court as to how to perhaps bring things together. And in that, I offered to drop the lawyers out of the case. The judge urged them to consult with their clients, and they came back and said, no, thanks. So we proceeded in piecemeal fashion with different pieces of litigation the way it was. The admonition about suing witnesses was nothing but an admonition. There's nothing in an order that tells me I can't sue witnesses. And, moreover, where does that come from? If a witness, whether the person coincidentally is a witness or not, if that person commits a civil rights violation, he doesn't have some immunity just because he's a witness and testified at some point as to the facts underlying that violation. That doesn't immunize that person. The district court could not have issued such an order, nor did he, so I didn't violate any order such as that. Whether or not I should have sought clarification, I think the reasonable interpretation of the injunction rule, that standard exists for a reason, and that is to prevent, or at least to inhibit, lawyers like me from running to the district judge to ask him an advisory opinion every time I'm going to do something that I think in the remotest sense might violate the injunction. Looking backwards, I think anything I would have done would have violated this judge's injunction in his mind. And I probably should have gone back and sought clarification like I did in Hussain 14, and he allowed me to file that case, which isn't before this argument. But when 12 and 13 were done, I thought I was exercising a reasonable interpretation of the injunction. I was, frankly, surprised to see the motions ordered to show cause. I went to that hearing thinking this is no sweat, and obviously I was wrong about that with this district judge. With respect to whether or not the charges in the complaint have merit, 1927 is not looking – it's not targeted towards the complaint. Whether or not the complaint had merit is a question for 1988, not for 1927. The question is whether or not I proceeded with the litigation vexatiously, unreasonably, and unnecessarily. With respect to my defense of the counterclaim, that was a surprise at the last minute. I did everything I could to represent my client in a counterclaim that at the time, if you look at it, was seeking over $600,000 in damages against Dr. Hussain. And they say it's related to Dr. Hussain's allegations, and that's what the district court found. But I think if you look closely at it, it's about donations, which have nothing to do with the allegations of Dr. Hussain. In terms of deterrence, if the sanction is supposed to deter me, there's lesser ways to do it than hit me with a million dollars. There really is. And in terms of compensation, if it's supposed to be compensatory for the excessive costs, they pointed to the very specific things. She just went through them, that they contend. My time's up. May I just finish this up? Sure. That the very specific things they pointed to here at the podium, at worst, that's what I should owe, not from January 2006 until the end of the case. Thank you, Your Honors. Thank you. Doctor, I'm afraid you used up all of your time in the first presentation. If you can, we'll give you one minute to summarize, if you wish. If the Court allows me, I'd like just to provide two corrections with regard to the Honorable Judge Wallace's question to the defense counsel. The first one was related to the boundaries of the injunction. And I'm not going to argue, I'm going to quote from the district court's own order written by the district court when Hussain 14 was filed, which is injunctive relief related to Hussain's termination, which until today, Hussain was never been able to litigate. He said, whether the state court has removed it to reconsider the order allowing Hussain 14 to go, which is injunctive relief. Whether the state court has jurisdiction to hear plaintiff's action for injunctive relief, it's an issue for the state court to consider. The injunction is prohibiting plaintiff from suing witnesses or litigating the factual and legal issues in this case. And he, the motion was filed in Hussain 1 and 2. He was talking about Hussain 1 and 2, not Hussain 11 as the expansion of the injunction went on later on. The second point, I believe, if the Court allows me, was related to the counterclaim. The counterclaim was never asserted as a defense, never. The magistrate judge never ruled because the issue was never before him. That was addressed in Docket 645. But the most interesting thing in Docket 645 has a database of all of the falsehoods that the magistrate judge ruled. One time, they spoke the truth, and they said the magistrate judge never ruled because the issue was never before the magistrate judge. And all of these quotations in Docket 644 were the exhibits supporting them. Finally, the student, if what happened, if the inguineous student, they moved in 2006 for sanctions. The magistrate judge denied the motion after it was fully briefed. They have never objected to the magistrate judge ruling, so the issue was never before the district court. Five years later today, we're addressing the $1.2 million order by the district court in 2010, addressing the same issue, which was never before the district court. With that, I conclude, Your Honor. Thank you for allowing me. Thank you. The case just heard will be submitted for decision. As you know, we have many other cases related to this. We've taken that under submission. I want you to know we've all spent a lot of time with the cases, and we'll issue our rulings later on that. Thank you very much. Thank you, Your Honor.
judges: Albritton, Wallace, Thomas